MRS. ADDIE BABSON v. CLAIROL, INC., AND JACKSON BEAUTY SUPPLY COMPANY.

(Filed 12 January, 1962.)

1. Process § 13—

A foreign corporation which has no process agent in this State may be served by service on the Secretary of State when it has carried on in this State regularly and systematically some of the functions or activities for which it was created. G.S. 55-145(c).

2. Same—

Evidence that a corporation manufacturing cosmetics regularly and systematically used agents in this State for the purpose of demonstration and promotion of its sales is sufficient to support a finding that it was doing business in this State so as to be amenable to service by service upon the Secretary of State.

APPEAL by defendant Clairol, Inc., from McKinnon, J., July 1961 Term, ROBESON Superior Court.

The plaintiff instituted this civil action against Clairol, Inc., the manufacturer, and Jackson Beauty Supply Company, the distributor, to recover damages allegedly resulting from her use of Clairol Hair Dressing Cosmetics, warranted as safe for such use when in fact they contained deleterious and poisonous substances which, when she applied them, caused irritation to her scalp, face and eyes, loss of hair, impairment of her vision, and loss of time and income.

The distributor, Jackson Beauty Supply Company, is a North Carolina corporation. Its principal office is in Greensboro. The manu-

facturer, Clairol, Inc., is a foreign corporation. Its manufacturing plant is located in Stamford, Connecticut, its principal office in New York City. The appellant does not have a certificate of authority to do business in North Carolina. It does not have any agent in this State upon whom process may be served. The plaintiff sought to make it a party defendant in this case by service upon the North Carolina Secretary of State.

The appellant entered a special appearance and moved to vacate the service and dismiss the action upon the ground Clairol, Inc., is a foreign corporation, does not do business in North Carolina, does not own property, does not maintain any office or place of business here. It does not have any officer, director, or managing agent in this State. Its products are manufactured in Connecticut where they are delivered to common carriers in interstate commerce. All its office activities are carried on in the City of New York. It attached to the motion affidavits tending to support its contentions.

In opposition to the motion to vacate the service, the plaintiff filed three affidavits. Beatrice Kinlaw testified:

> "2. That she operates a beauty shop in the City of Lumberton, North Carolina.
> "3. That on various occasions various representatives of Clairol, Inc., have called on me at my place of business and represented themselves to be 'Dye Technicians' of Clairol, Inc., and traveling throughout the State of North Carolina promoting the sales of Clairol products to me and to other persons in similar business as myself; that such 'Dye Technicians' of Clairol, Inc., have on various occasions provided me with up-to-date knowledge of Clairol products and with free advertising and promotional material designed to encourage the general public to make more use of Clairol products, and particularly to encourage beauty shops to make a greater use of Clairol products and this has been regularly done over a period of the last two years."

Addie Babson, the plaintiff, testified:

> "That she owns and operates Addie's Beauty Shop in Bladenboro, North Carolina, and is now working as a beautician in said shop. That she received her training as a beautician at Fayetteville Beauty College, Fayetteville, North Carolina, during or about the year 1951. That while attending said Beauty College and at said schools Clairol technicians would demonstrate how to use Clairol products. That at said schools said technicians represented that they were employees of Clairol, Inc., and said technicians did

represent that the products used and demonstrated were products of Clairol, Inc. That said Clairol demonstrations schools were usually of one day duration and that during the demonstrations said technicians did 'puff' the qualities of Clairol products. That said schools were attended by students at the Fayetteville Beauty College and by beauticians throughout the immediate area. That since attending Fayetteville Beauty College said affiant has attended other Clairol demonstration schools held at Fayetteville Beauty College and that technicians or demonstrators at said schools represented that they were employees of Clairol, Inc., and that said technicians and demonstrators represented that the products used and demonstrated were the products of Clairol, Inc. That since attending Fayetteville Beauty College during or about 1951 said Clairol demonstrations schools have been held at Fayetteville Beauty College at least once a year and that said schools have been attended by students at the Fayetteville Beauty College and also beauticians and beauty parlor operators throughout the immediate area."

Bobbie Schmidt testified in part:

"That she is trained as a beautician and is now working as a beautician in the Town of Bladenboro. That she was trained as a beautician in the Fayetteville Beauty College, Fayetteville, North Carolina, and has worked as a beautician for several years. That she attended the Carolina Beauty and Harvest Festival at the Hotel Charlotte, Charlotte, North Carolina, on October 4, 5, 6, 1959, and that said Carolina Beauty and Harvest Festival was a convention for the promotion of beauty aid products produced by several companies including Clairol, Inc., and said convention had the further purpose of demonstrating new techniques using beauty aid products produced by several companies including Clairol, Inc. That said convention was attended by hundreds of beauticians and beauty parlor operators from all parts of the State of North Carolina, and that Clairol, Inc., was represented by several technicians and representatives at said convention. That Clairol, Inc., maintained a Clairol demonstration headquarters located in the Hotel Charlotte at said convention, and that in said demonstration headquarters Clairol technicians and representatives demonstrated the coloring, setting, and cutting of the hair and how the Clairol products would enhance the business of beauticians and beauty parlor operators. That said representatives and technicians employed by Clairol, Inc., would take orders and make sales of Clairol products in said Clairol

demonstration headquarters, and that said representatives did take orders and make sales of said Clairol products. That said representatives and technicians employed by Clairol, Inc., sold Clairol products at the said convention at a price cheaper than the normal price for beauticians and beauty parlor operators to encourage the sale of said products at said convention; that said representatives and technicians would first make their talks and demonstrations 'puffing' the qualities of Clairol products and would then make sales and take orders, thereby gaining maximum sales."

The court made detailed findings that Clairol, Inc., had engaged in business activities in North Carolina, substantially in the manner described in the plaintiff's affidavits. Upon the findings, the court concluded:

"(1) Service of process was had upon the defendant Clairol, Inc., in this case in full compliance with the procedural requirements of G.S. 55-146, as authorized by G.S. 55-145(c).

"(3) The activities which Clairol, Inc., has carried on in this State through its employees and agents have been throughout the period in question, regular, systematic and continuous and have resulted in a large volume of interstate business between said company and persons and concerns in this State.

"(5) The activities of Clairol, Inc., carried on in North Carolina as above stated establish such direct, substantial and uninterrupted contacts by that company with this State as to make it reasonable and just for this Court to exercise its jurisdiction over said company in this case as authorized by G.S. 55-145 and 146.

"(6) Under all of the facts contained in the record before this Court, no right of Clairol, Inc., under the 14th Amendment of the United States Constitution or under Article I, Section 17, of the North Carolina Constitution will be violated by this Court's exercise of the jurisdiction conferred upon it by G.S. 55-145 over said company."

From the order denying the motion to dismiss and requiring the defendant to answer in thirty days, Clairol, Inc., appealed.

*Hackett & Weinstein; McLean & Stacy, William S. McLean of Counsel for plaintiff appellee.*

*Everett L. Henry, Henry & Henry for defendant Clairol, Inc., appellant.*

HIGGINS, J.    Clairol, Inc., is a foreign corporation engaged in the manufacture, sale, and distribution of hair dressing cosmetics. The products are manufactured in Connecticut. Sales are directed from the general office in New York City. These products are widely used by beauticians and are sold to the public by drug stores throughout North Carolina. As far as the evidence discloses, deliveries are made here through the channels of interstate commerce. The plaintiff alleges the other defendant is a distributor, but the nature of its relationship with the appellant is otherwise undisclosed.

The appellant contends the evidence is insufficient to support the finding and conclusion that it is doing business in North Carolina to the extent necessary to enable the courts here to take jurisdiction and enter an *in personam* judgment. It contends the order denying its motion to vacate the service and require it to submit to the jurisdiction violates its Due Process rights under the 14th Amendment to the Constitution of the United States. *Putnam v. Triangle Publications, Inc.*, 245 N.C. 432, 96 S.E. 2d 445; *Heath v. Mfg. Co.*, 242 N.C. 215, 87 S.E. 2d 300; *Lambert v. Schell*, 235 N.C. 21, 69 S.E. 2d 11.

Service on the Secretary of State is sufficient to bring into court a foreign corporation if it does not have a process agent and is doing business in this State. "Doing business in this State means doing some of the things or exercising some of the functions in this State for which the corporation was created." *Harrington v. Steel Products, Inc.*, 244 N.C. 675, 94 S.E. 2d 803; *Radio Station v. McCullough*, 232 N.C. 287, 59 S.E. 2d 779. "Presence in this State in this sense has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also gave rise to the liabilities sued. on even though no consent to be sued or authorization to . . . accept service has been given." *International Shoe Co. v. Washington*, 326 U.S. 310; *International Harvester Co. v. Kentucky*, 234 U.S. 407; *Harrison v. Corley*, 226 N.C. 184, 37 S.E. 2d 489.

The appellant's business is cosmetics. The ultimate object is sale to the consumer. Without demand there would be no sale; and without the sale the appellant would be out of business. Consequently, the creation of the demand for the product and the sale to meet the demand are mud sills to successful operation. Appellant's demonstrational and promotional activities in North Carolina, to this end, (as shown by the affidavits) are so varied, extensive, and so directly tied to the purposes for which the company was created as to leave no serious question but that the appellant is and has been doing business here. The court so found. The evidence supports the findings. While each case must be decided on its own facts, nevertheless the cases cited lay down the rules for decision.

Other questions raised on the appeal are immaterial. Service upon the Secretary of State was effective to bring the appellant into court and require it to answer or otherwise plead. The order entered in the superior court is
Affirmed.