503 P.2d 967

**DEERE & COMPANY, Petitioner,**

v.

**The SUPERIOR COURT of the State of Arizona FOR PIMA COUNTY, and The Honorable Lee Garrett, a Judge thereof, and Robert S. VINSON, Real Party In Interest, Respondents.**

No. 2 CA–CIV 1312.

Court of Appeals of Arizona, Division 2.

Dec. 12, 1972.

**492**

Evans, Kitchel & Jenckes, P.C. by Newman R. Porter, Phoenix, for petitioner.

Hirsch & Pakula by David L. Pakula, Tucson, for respondents.

HOWARD, Judge.

This special action challenges the lower court's refusal to quash service of process and to dismiss a pending lawsuit as to petitioner. Since appellate intervention via special action is appropriate to review the subject ruling, we assume jurisdiction.

Molybdenum Corporation of America v. Superior Court In and For The County of Pima, 17 Ariz.App. 354, 498 P.2d 166 (1972).

The posture of the case is as follows. Respondent real party in interest, hereinafter referred to as plaintiff, filed a complaint in superior court seeking damages for personal injuries sustained by him. Named as defendants were petitioner, Deere & Company, a foreign corporation, hereinafter referred to as defendant; Allison Equipment Company, also a foreign corporation; and various fictitious corporate and individual defendants. Three claims for relief were set forth: negligence, breach of warranty and strict liability.

The complaint alleged in pertinent part that plaintiff was an Arizona resident, that defendant was doing business in the State of Arizona, and that defendant Allison was doing business in Oklahoma. It further alleged that in November, 1971, plaintiff was working upon a certain John Deere Grain Combine, manufactured and/or sold by the defendant in Texas, and was injured there when he fell off the platform of the grain combine. A copy of the summons and complaint was served upon an officer of the defendant corporation at its offices in Moline, Illinois. Defendant contended that this service of process outside of the State of Arizona, was not effective to give the lower court jurisdiction. Rule 4(e)(2), as amended, Arizona Rules of Civil Procedure, 16 A.R.S. provides that direct service out of the state shall have the effect of personal service within the state when the defendant "is a corporation doing business in this state."

Appended to defendant's motion raising the jurisdictional question was an affidavit of defendant's corporate secretary which recited *inter alia* that she was familiar with defendant's corporate structure, organization, activities, and history; that defendant was organized under the laws of Delaware and maintained its principal offices in Illinois where it was qualified to

do business; that she was the statutory agent for service of process; that the principal business activity of defendant was the design, development and manufacture of agricultural, industrial and consumer goods machinery and that such activity was conducted at various offices and factories located in Illinois, Iowa, and Wisconsin; that defendant was not engaged in the retail marketing or servicing of any such equipment in Arizona; that defendant transacted no business in Arizona, was not qualified to do business in Arizona, and had no registered agent for service of process in Arizona; that the only activity conducted by defendant in Arizona consisted of small-scale testing operations of new machinery which were conducted upon land owned by others and involved less than six employees and approximately five to ten machines at any one time; that apart from this testing activity, defendant maintained no property, facilities, factories, offices, agents, or employees in Arizona; that defendant had no bank accounts, telephone listings, computer services, or any other business apparatus in Arizona and paid no taxes in Arizona; that the Arizona testing activity was "infinitesimal" in relation to defendant's total activities; and that defendant had not participated in any contact, transaction or business with plaintiff or performed any activity or maintained any contact in Arizona related to the plaintiff.

In opposition to defendant's motion, plaintiff submitted an affidavit of his attorney, photocopies of two pages from the Tucson telephone directory, and a copy of a contract entered into between plaintiff and defendant Allison Equipment Company.[1] The affidavit of counsel recited that the affiant had been informed that Deere & Company sold its equipment to Burris-White of Tucson, Arizona; that

this business was transacted in Arizona; that the equipment was delivered by defendant to Tucson and was paid for by Burris-White on a Tucson bank; and that there are Deere & Company dealers located throughout the State of Arizona, each transacting business in a like fashion. The telephone directory pages show that "John Deere Equipment" was sold and serviced by Burris-White Machinery Company (yellow pages), and there was also a listing for "John Deere Construction Equip." The contract between Allison and plaintiff recited:

" . . . The construction, enforcement and validity of this contract shall be governed by the law of the State where the debtor resides, as indicated below [Pima County, Arizona] where the goods are to be kept and used, and where the contract is therefore to have effect."

■ When defendant posed the jurisdictional challenge, the plaintiff had the burden of showing that defendant was doing business in the state within the purview of the long-arm statute at the time service of process was effected. Crescent Corporation v. Martin, 443 P.2d 111 (Okl.1968); Detsch & Company v. Calbar, Inc., 228 Cal.App.2d 556, 39 Cal.Rptr. 626 (1964); Ford Motor Company v. Arguello, 382 P.2d 886 (Wyo.1963). We do not believe that the plaintiff met his burden in this respect.

■ The affidavit executed by plaintiff's counsel, no matter how liberally we may construe it, does not support a finding of defendant's "presence" in this state. The affidavit merely shows presence of equipment manufactured by the defendant, which is insufficient to confer jurisdiction. Leach Company v. Superior Court, In and For the County of Santa Clara, 266 Cal. App.2d 493, 72 Cal.Rptr. 216 (1968). Fur-

---

1. Additionally, appended to plaintiff's response to the subject petition for special action, are photocopies of documents recorded in the office of the Pima County Recorder. These documents are financing statements filed pursuant to the Uniform Commercial Code. They reflect that the request for filing was made by John Deere Company and that the name of the assignee of the secured party was John Deere Company.

thermore, it is important to note that neither the plaintiff's purchase of the defendant's product nor the injuries allegedly sustained as a result of its use by the plaintiff, occurred in Arizona. A similar situation was presented in the case of Fisher Governor Company v. Superior Court of the City and County of San Francisco, 53 Cal.2d 222, 1 Cal.Rptr. 1, 347 P.2d 1 (1959). The accident causing the death of some persons and injuries to others occurred in Idaho. The allegedly defective equipment involved was manufactured by an Iowa corporation. Just as in the case at bench, the products were sold in California through independent distributors at whose addresses and telephone numbers the manufacturer was listed in the telephone book. The California Supreme Court, in directing quashal of service of process on the manufacturer, rested its decision on the grounds that the causes of action did not arise out of and were not related to the manufacturer's activities in California; that none of the relevant events occurred there; that evidence could be produced as easily or more easily elsewhere; and that even if plaintiff could not secure jurisdiction over the manufacturer in Idaho, they could prosecute their action against it as conveniently in Iowa as in California. The court observed that although a foreign corporation may have sufficient contact with the state to justify an assumption of jurisdiction over it, in order to enforce claims having no relation to its activities in California more contacts are required for the assumption of such extensive jurisdiction than sales and sales promotions within the state by independent sales representatives.

A review of one reported decision which explains the manner in which Deere & Company does business, Harris v. Deere and Company, 223 F.2d 161 (4th Cir. 1955), indicates the following. Its charter empowers it to manufacture and sell agricultural machinery in any and all of the states and territories of the United States. It distributes the products of its factories through subsidiary corporations, all of which have "Deere" or "John Deere" in the corporate name. These subsidiaries contract with and sell farm equipment to dealers, such as Burris-White, for resale to users of such equipment. The parent corporation wholly owns and controls the subsidiary corporation but the separate corporate entity of the subsidiary corporation is observed.

The documentary proof relied upon by plaintiff in this court and the court below, i. e., telephone directory pages and recorded financial statements, refer only to "John Deere". Although it would appear that there is no entity known as "The John Deere Company", Gordon v. John Deere Company, 451 F.2d 234 (5th Cir. 1971), the most that plaintiff's proof can be said to accomplish is activity within this state by a subsidiary corporation. The mere relationship of parent corporation and subsidiary corporation is not of itself a sufficient basis for holding that the parent corporation has "presence" in the forum state. 2 J. Moore, Moore's Federal Practice § 4.25 [6] (1967) and cases cited therein. Thus we see that there is no merit to plaintiff's position that by virtue of sales activities in Arizona defendant had the requisite "presence" in this state.

The other proof relied upon, a contract between Allison Equipment and plaintiff, creates no relationship between defendant and the State of Arizona.

The study of long-arm jurisdiction has been the subject of a plethora of law review articles in recent years. See Comments, 69 Mich.L.Rev. 300 (1970), and references therein. A reading of the myriad of authority in this area reflects that notwithstanding due process requirements for assertion of in personam jurisdiction have become considerably less stringent, due process limitations have not been eradicated. See Annot., 27 A.L.R.3d 397 et seq. (1969). It is clear that the test of personal jurisdiction over non-resident defendants is one of "fairness" to be applied on an ad hoc basis. Phillips v. Anchor Hocking

Glass Corp., 100 Ariz. 251, 413 P.2d 732 (1966).

Concededly, a "fair play" standard requires a subjective judgment, as there is no mathematical formula which can be applied. Our Supreme Court in *Phillips,* supra, discussed certain factors appropriate to consider but also indicated that they were not exclusive. In Molybdenum Corp. v. Superior Court, supra, we pointed out that consideration must be given to the quality, nature and extent of the defendant's activity in this state, the relative convenience of the parties, the benefits and protection of Arizona laws afforded the respective parties, and the basic equities of the situation. In that case, Arizona's only nexus with the plaintiff's claim for relief was his act of depositing in the mail in Arizona a written acceptance of the employment contract upon which the suit was based.

Unless a defendant's forum-related activity reaches such extensive or wide-ranging proportions as to make the defendant sufficiently "present" in the forum state to support jurisdiction over it concerning causes of action which are unrelated to that activity, the particular cause of action must arise out of or be connected with the defendant's forum-related activity. Buckeye Boiler Company v. Superior Court of Los Angeles County, 71 Cal.2d 893, 80 Cal.Rptr. 113, 458 P.2d 57 (1969).

The only forum-related activity of Deere & Company, as indicated by the affidavit of its corporate secretary, consisted of "small-scale testing operations" upon land owned by others. The plaintiff's cause of action did not arise out of this testing activity. Therefore the query is: Was this activity of such proportion as to warrant a finding that defendant was "doing business" within this state? We think not. A foreign corporation is "doing business" when it engages in transactions *with others* within the state. Zeidler v. Johnson, 346 Mich. 203, 77 N.W.2d 756 (1956). The testing activity was merely incidental to the functions for which the defendant was organized, namely the manufacture of farm equipment. There was no showing that this testing activity involved anyone other than the defendant's employees.

We do not consider this activity of the defendant to be like that involved in Babson v. Clairol, Inc., 256 N.C. 227, 123 S.E. 2d 508 (1962), where the court held that promotional and demonstrational activities of the foreign corporation were so directly tied to the purposes for which the corporation was created, *i. e.,* sales to consumers, that such activities constituted doing business in the state. We believe that it is more akin to research work which has been held to not constitute doing business. Brocia v. Franklin Plan Corp., 235 App. Div. 421, 257 N.Y.S. 167 (1932).

Plaintiff relies on the case of Regie Nationale Des Usines Renault, Billancourt (Seine), France v. Superior Court In and For The County of Sacramento, 208 Cal. App.2d 702, 25 Cal.Rptr. 530 (1962), wherein the court refused to exempt the defendant, a French corporation, from jurisdiction in a suit for personal injury. Although the defendant did not sell its cars directly in California, it inaugurated a flow of its products to California through a "chain of sales" involving a wholly-owned American subsidiary, an independently-owned distributorship and dealerships. The court held that the indirect manner in which the defendant dealt with California consumers "effect[s] little, if any, alteration in the jurisdictional situation." While we have no quarrel with the California court's approach under the circumstances of that case, and its concern with economic reality rather than the outward form of the business transactions, we do not believe it is applicable here. In *Regie,* supra, the inquiry occurred in the forum state and additionally, had the California court declined to assume jurisdiction, no forum within the United States would have been available to the plaintiff.

In the case at bench, the only apparent connection with this state is the fact that

the plaintiff is a resident of Arizona. The injury-causing equipment was purchased in Oklahoma from an Oklahoma dealer and the injury occurred in Texas. The plaintiff's cause of action did not arise out of the defendant's testing activity within this state and none of the relevant events occurred here. Applying the "fair play" standard to the instant situation, we are of the opinion that it would be manifestly unfair to compel this non-resident defendant to defend itself in this state.

For the foregoing reasons, the trial court is directed to enter an appropriate order granting the defendant's motion.

HATHAWAY, J., and ESTES D. McBRYDE, Superior Court Judge, concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge ESTES D. McBRYDE was called to sit in his stead and participate in the determination of this decision.